IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF RUSALIN SORIN MĂRGINEAN | Case No. 3:21-mc-01260-SB<br><br>OPINION AND ORDER |

**BECKERMAN, U.S. Magistrate Judge.**

The United States, on behalf of the Government of Romania ("Romania"), seeks the extradition of Rusalin Sorin Mărginean ("Mărginean"), who was convicted of instigation to misrepresentation and use of a false deed under private signature in the Alba District Court in Alba County, Romania (the "Romanian Court"), in October 2014. (Compl. ¶ 5, ECF No. 1.) The parties have asked the Court to resolve, prior to the extradition hearing, the question of whether the Romanian Court convicted Mărginean *in absentia*. (*See* Supp. Br. Trial In Absentia ("Supp. Br."), ECF No. 46; Resp. Fugitive's Supp. Br. Trial In Absentia ("Resp."), ECF No. 47; Reply Gov't's Resp. Trial In Absentia ("Reply"), ECF No. 48.)

## BACKGROUND

Article 8 of the Extradition Treaty between the United States of America and Romania (the "Extradition Treaty") requires that requests for extradition shall be submitted through the

PAGE 1 – OPINION AND ORDER

diplomatic channel, and shall be supported by several categories of information. (Compl., Ex. 1 at 29.) Article 8, paragraph 3 of the Extradition Treaty governs the information required for "a request for extradition of a person who is charged with an offense" and paragraph 4 governs "a request for extradition relating to a person who has been found guilty or convicted of the offense for which extradition is sought." (*Id.*) Article 8, paragraph 4(d) provides that "in the case of a person who has been found guilty or convicted in absentia," the requesting state must provide "the documents required by paragraph 3 of this Article and information regarding the circumstances under which the person was absent from the proceedings." (*Id.* at 30.) Paragraph 3 requires that the extradition request shall be supported by a copy of the warrant or order of arrest or detention, a copy of the charging document, and "such information as would provide a reasonable basis to believe that the person sought committed the offense for which extradition is sought." (*Id.* at 29.)

As relevant to the Court's analysis herein, the Romanian Court presided over twenty hearings in Mărginean's criminal trial from February 2013 through October 2014, resulting in Mărginean's conviction. (Supp. Br. at 1.) Mărginean was not present for seventeen of those twenty hearings. (*Id.*) Although Mărginean was represented by counsel at many of the hearings he missed, both he and his counsel were absent from three days of trial, including January 27, 2014, when two of the five trial witnesses testified. (*Id.* at 3.)

## DISCUSSION

### I.     LEGAL STANDARDS

Extradition is a diplomatic process governed by the federal extradition statute, 18 U.S.C. § 3181 *et seq.*, and by the relevant treaty—in this case, the Extradition Treaty. (*See* Compl., Ex. 1.)

///

PAGE 2 – OPINION AND ORDER

Section 3184 governs international extradition procedures in the United States:

> Whenever there is a treaty or convention for extradition between the United States and any foreign government, . . . any justice or judge of the United States, or any magistrate judge authorized so to do by a court of the United States, . . . may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, . . . issue his warrant for the apprehension of the person so charged, that [s]he may be brought before such justice, judge, or magistrate judge, to the end that the evidence of criminality may be heard and considered. . . . If, on such hearing, [s]he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, . . . [s]he shall certify the same, together with a copy of all the testimony taken before h[er], to the Secretary of State[.]

18 U.S.C. § 3184; *see also Lopez-Smith v. Hood*, 121 F.3d 1322, 1326 (9th Cir. 1997) ("Extradition is a matter of foreign policy entirely within the discretion of the executive branch, except to the extent that the statute interposes a judicial function." (citing *In re Metzger*, 46 U.S. (5 How.) 176, 188 (1847))).

"The court's task in [extradition] proceedings is to determine: (1) whether the fugitive is accused of an extraditable crime and (2) whether there is probable cause to believe the fugitive committed the crime he is charged with." *In re Extradition of Ameen*, No. 2:18-mj-152-EFB, 2021 WL 1564520, at *9 (E.D. Cal. Apr. 21, 2021) (citing *Santos v. Thomas*, 830 F.3d 987, 991 (9th Cir. 2016)). "[T]he judicial officer conducts a hearing to determine whether there is 'evidence sufficient to sustain the charge under the provisions of the proper treaty or convention,' . . . in other words, whether there is probable cause." *Vo v. Benov*, 447 F.3d 1235, 1237 (9th Cir. 2006) (quoting 18 U.S.C. § 3184); *Matter of Extradition of Santos*, 228 F. Supp. 3d 1034, 1036 (C.D. Cal. 2017) ("The government bears the burden of establishing extraditability, so the government must show, among other things, that there is competent evidence establishing probable cause to believe that the person named in the extradition request committed the charged offense." (citing, *inter alia*, 18 U.S.C. §§ 3184, 3190)).

PAGE 3 – OPINION AND ORDER

"[A] conviction is ordinarily conclusive proof of probable cause." *In Matter of Extradition of Ernst*, 97 CRIM.MISC.1 PG.22, 1998 WL 395267, at *6 (S.D.N.Y. July 14, 1998) (citations omitted); *In re Extradition of Camelo-Grillo*, No. CV 16-9026 JVS (SS), 2017 WL 2945715, at *7 (C.D. Cal. July 10, 2017) ("Where, as here, the fugitive has already been convicted, the conviction is often considered dispositive of the existence of probable cause."). "However, where . . . the conviction is the result of a trial *in absentia*, the conviction is regarded merely as a charge, requiring independent proof of probable cause." *In Matter of Extradition of Ernst*, 1998 WL 395267, at *7 (collecting cases and concluding that the extraditee's "conviction *in absentia* must be regarded as only a charge and the government is required to make an independent showing of probable cause to believe that [the extraditee] committed the offenses with which he is charged"); *Gbessay v. Dunne*, No. 13-CV-6571 (MKB), 2020 WL 9816006, at *6 (E.D.N.Y. May 4, 2020) ("[W]here an extradition request involves a conviction resulting from an *in absentia* trial, the inquiry for a reviewing court is whether there is probable cause that the individual committed the offenses he has been convicted of in the requesting country.") (citation omitted); *Haxhiaj v. Hackman*, 528 F.3d 282, 291 (4th Cir. 2008) ("Underlying the disparate treatment of a conviction rendered *in absentia* is the notion that 'a trial in absentia is not likely to be a fair trial,' affording the accused 'no opportunity to confront the prosecution witnesses or to present a defense' and providing no real 'assistance in ascertaining the probable guilt of the accused.'") (citation omitted).

## II. ANALYSIS

The parties ask the Court to determine, prior to the extradition hearing, if the Romanian Court convicted Mărginean *in absentia*. The Ninth Circuit has not had an opportunity to provide clear guidance on what qualifies as an *in absentia* conviction, or the impact of such a conviction,

PAGE 4 – OPINION AND ORDER

in connection with a request for extradition. *See United States v. Umbarila*, 562 F. Supp. 3d 729, 742 (C.D. Cal. 2022) ("The Ninth Circuit has not definitively resolved whether the fact of conviction, by itself, is sufficient to establish probable cause if it was obtained in absentia.").

In the extradition context, other courts have found that "[c]onvictions in absentia can generally be organized into three categories: 1) cases in which the accused was present for some or all of the proceeding leading up to the conviction, 2) cases in which the accused was not present but was fully represented by counsel, and 3) cases in which the accused was entirely unrepresented." *In re Extradition of Risner*, No. 3:18-mj-765-BN, 2019 WL 6118377, at *7 (N.D. Tex. Nov. 18, 2019) (citations omitted).

It is undisputed that Mărginean was present for only three of the twenty total days of his criminal trial. (*See* Supp. Br. at 1, citing the trial record; Resp. at 1, acknowledging that Mărginean was present for only three days of trial: September 16 and 30, 2013, and October 28, 2013). Thus, this case does not present the first *in absentia* scenario where the extraditee is present for most of his trial but absconds before judgment enters. Nor does this case present the third scenario, i.e., where the accused was entirely unrepresented, because it is undisputed that Mărginean was represented by counsel for most of his trial.

Rather, this case presents a scenario more like the second, whereby Mărginean was absent for most of his trial but was represented by counsel. Generally, "the presence of counsel alone at the foreign trial [i]s insufficient to give the foreign conviction conclusive effect." *In Matter of Extradition of Ernst*, 1998 WL 395267, at *7; *see also id.* (concluding that the extraditee's "conviction *in absentia* must be regarded as only a charge and the government is required to make an independent showing of probable cause" where the extraditee was residing

PAGE 5 – OPINION AND ORDER

in the United States at the time of his criminal trial in Switzerland but was represented by counsel at trial).

Even if there might be scenarios in which counsel's presence for the entirety of trial, combined with the accused's intermittent presence, are enough to find that a conviction was not *in absentia*, here it is undisputed that there were at least three days of Mărginean's criminal trial at which neither he nor his counsel appeared. Importantly, on January 27, 2014, neither attended trial when two witnesses (of a total five witnesses) testified. (*See* Supp. Br. at 3, citing trial record; Resp. at 10, acknowledging that "neither Mărginean nor his counsel were present at the January 27, 2014, hearing at which the court heard the testimony of two witnesses"). Thus, Mărginean was not personally present and was unrepresented during a critical phase of his criminal trial, and did not have the opportunity to cross examine two trial witnesses nor object to their testimony. *Cf. United States v. Cronic*, 466 U.S. 648, 658-59 (1984) ("The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial."). The government has not identified any extradition cases in which courts have concluded that the absence of both a defendant and his counsel at a critical stage of trial did not result in an *in absentia* conviction. For all of these reasons, the Court concludes that the Romanian Court convicted Mărginean *in absentia*.

In light of Mărginean's *in absentia* conviction, the Court finds that Romania must comply with Section 8, paragraph 4(d) of the Extradition Treaty, and the Court must make an independent finding of probable cause to certify Mărginean's extradition to Romania.[1]

---

[1] The Court does not yet reach the government's argument (*see* Opp'n Fugitive's Mot. Compel Disc. at 8-9, ECF No. 23) that the Romanian Court's 33-page decision in support of Mărginean's judgment is sufficient to establish probable cause here. *See, e.g., Matter of Extradition of Blasko*, No. 1:17-mc-00067-DAD-SAB, 2018 WL 6044921, at *9 (E.D. Cal. Nov. 19, 2018) ("Further, the Court finds no merit to the argument that the judgment itself is

PAGE 6 – OPINION AND ORDER

## CONCLUSION

For the reasons stated, the Court concludes that Romania convicted Mărginean *in absentia*, and orders the parties to confer regarding a mutually acceptable date for the extradition hearing and notify the Court by December 1, 2023.

**IT IS SO ORDERED.**

DATED this 21st day of November, 2023.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge

---

insufficient to establish probable cause. While courts have denied extradition where the requesting country's submissions are merely conclusory, unsupported by underlying documentation, or were otherwise unreliable, the question to be addressed is whether there is competent legal evidence that 'demonstrate[s] probable cause to believe that the accused committed the crime charged' by the requesting nation. Here, . . . the requesting nation has provided more than the mere fact of conviction and the sentence that was imposed. The judgment itself is an extensive recitation of the evidence that was considered and contains the testimony and statements of twenty witnesses and other documentary evidence that was considered during the trial of the matter.") (citations omitted); *see also In the Matter of Extradition of Manea*, No. 15 MJ 157 (JGM), 2018 WL 1110252, at *14 (D. Conn. Mar. 1, 2018) ("In this case, [the extraditee] contends that Article 8 of the Extradition Treaty . . . explicitly requires separate evidence supporting probable cause when a defendant has been tried in absentia, and thus under the terms of the Treaty, Romania must provide evidence of 'something other than the charging document, arrest warrant, and conviction and sentencing documents.' The Court agrees that more than conclusory evidence is required; however, the evidence submitted by Romania suffices.") (simplified).